UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

Ronald Sorenson,

　　　　　　　　Petitioner,

　　v.

Margaret Gilbert,

　　　　　　　　Respondent.

CASE NO. 3:16-cv-05227-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: August 2, 2019

The District Court has referred this petition for a writ of habeas corpus to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Petitioner filed the petition pursuant to 28 U.S.C. § 2254.

The Court recommends dismissing the petition with prejudice as time-barred because it was filed after the statute of limitations. Although petitioner contends that he is entitled to equitable tolling of the limitations period due to his counsel's late filing of his personal restraint petition, counsel filed the petition based on his assessment of Washington law at the time which

does not constitute egregious misconduct and does not warrant equitable tolling. Moreover, although petitioner contends that he has shown actual innocence, entitling him to excuse the statute of limitations, he has not established factual innocence with new evidence.

BACKGROUND

On March 8, 2012, petitioner was found guilty by jury verdict in Clark County Superior Court of four counts of first-degree child molestation, four counts of second-degree child molestation, and one count of third-degree child molestation. Dkt. 34, Exhibit 1, Judgment and Sentence. Petitioner was sentenced to an exceptional sentence above the standard range of 240 months to life. *Id.* On January 28, 2014, the Washington Court of Appeals affirmed petitioner's convictions but remanded to the superior court with instructions to correct the errors in the judgment and sentence. Dkt. 34, Exhibit 2. The Washington Court of Appeals held that petitioner's judgment and sentence incorrectly stated the dates that petitioner committed the offenses in counts 2, 3, and 9. *Id.* Petitioner appealed to the Washington Supreme Court, and the Washington Supreme Court denied review on July 9, 2014. Dkt. 34, Exhibit 6. On August 12, 2014, the Washington Court of Appeals issued its mandate to the trial court. Dkt. 34, Exhibit 10 at Appendix C. On September 15, 2014, the trial court signed an order correcting petitioner's judgment and sentence as directed by the Washington Court of Appeals. Dkt. 34, Exhibit 10 at Appendix D.

On September 15, 2015, petitioner filed an application for a state collateral attack, a personal restraint petition ("PRP"). Dkt. 34, Exhibit 8. The Washington Court of Appeals dismissed the PRP as time-barred, and in the alternative, dismissed the PRP on the merits of petitioner's claims. Dkt. 34, Exhibit 12. Petitioner filed a motion for discretionary review with the Washington Supreme Court. Dkt. 34, Exhibit 13. Petitioner also filed a *pro se* motion arguing

1   that the State's late filed response should be dismissed. Dkt. 34, Exhibit 16. The Washington

2   Supreme Court denied the motion for discretionary review and the *pro se* motion without

3   comment. Dkt. 34, Exhibit 17.

4       On March 24, 2016, petitioner signed his habeas corpus petition ("the petition"). Dkt. 4.

5   The Court granted permission to stay the petition while petitioner's PRP was pending in state

6   court. Dkt. 10. After the Washington Supreme Court denied petitioner's motion for discretionary

7   review on August 8, 2018, the Court lifted the stay. Dkt. 32.

8       Respondent filed an answer to the petition, asserting that the petition was filed after the

9   statute of limitations period expired. Dkt. 33. Respondent maintains the petition is time-barred

10  and should be dismissed with prejudice. Dkt. 33. Petitioner filed a traverse, arguing that he

11  should be entitled to equitable tolling of the statute of limitations because his counsel at the state-

12  court level filed the PRP late, and in the alternative, that he is actually innocent. Dkt. 36. The

13  Court ordered the parties to submit supplemental briefing as to whether petitioner was entitled to

14  equitable tolling. Dkt. 37. On January 31, 2019, respondent filed her supplemental answer. Dkt.

15  40. On April 11, 2019, petitioner filed his supplemental brief. Dkt. 45.

16      On May 2, 2019, the Court ordered respondent to provide the verbatim reports of trial

17  proceedings (VRPs) and submit her response to petitioner's actual innocence claim. Dkt. 46. On

18  May 16, 2019, respondent filed her second supplemental answer and supplemental state court

19  record. Dkts. 47, 48. After the Court granted an extension of time, petitioner filed his second

20  supplemental brief on June 28, 2019. Dkts. 50, 51.

21                            STATEMENT OF FACTS

22      The Washington Court of Appeals summarized the facts of petitioner's crimes:

23  > The State charged Sorenson with two counts of first degree child molestation and two counts of second degree child molestation against BES, two

24

REPORT AND RECOMMENDATION - 3

counts of second degree child molestation and one count of third degree child molestation against BLS, and two counts of first degree child molestation against AKB. BES, BLS, and AKB are all related to Sorenson.

Before trial, Sorenson moved for a continuance so that he could obtain impeachment evidence. He sought information about a subsequently added victim, evidence from Facebook, and he wanted to interview 72 additional potential witnesses. The State contested the continuance motion, arguing that (1) the case was over a year old; (2) Sorenson's new attorney had been working the case for six months; (3) the State added its latest victim a month and a half earlier; and (4) Sorenson's desired evidence was irrelevant and cumulative, so his need for it did not outweigh the detriment of delay to the victims. The trial court denied Sorenson's continuance motion after considering the State's arguments and judicial economy interests.

At trial, BES testified that when she was 11, she woke up roughly 10 times with Sorenson's hand touching her sexual or intimate parts. AKB testified that when she was 8 or 9, Sorenson would lie with her on the couch "spooning style" 15 to 20 times, touching her sexual or intimate parts. BLS testified that when she was between 11 and 14 years old, she woke up two times with her hand touching Sorenson's sexual or intimate parts; on one of those occasions, Sorenson's hand was also touching BLS's sexual or intimate parts. Additionally, BLS, testified that when she was 14, she woke up with Sorenson's hand touching her sexual or intimate parts.

Sorenson testified in his own defense, explaining that the girls frequently climbed into bed or onto the couch with him when he was sleeping. While Sorenson admitted that he "cuddled" with the girls, he denied ever inappropriately touching them. He also acknowledged that had he touched any of the girls, the touching was purely accidental during the course of cuddling.

After the presentation of evidence, Sorenson requested an instruction to limit consideration of evidence regarding each victim to the charges relating to that victim. Sorenson proposed his own evidence regarding each victim to the charges relating to that victim. Sorenson proposed his own limiting instruction, but the trial court refused to read it to the jury because it inaccurately states the law. The trial court did, however, direct the jury in its final instructions, "A Separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count."

During closing argument, the prosecutor made the following statements to convince the jury of the victims' credibility beyond a reasonable doubt. (1) "[I]f you have an abiding belief that these girls testified truthfully, you have an abiding belief in what they said, you are satisfied beyond a reasonable doubt." (2) "I want to go through each girl and submit – and show you how they are credible and how you should have an abiding belief in what they are saying." (3) "And they have

REPORT AND RECOMMENDATION - 4

come forward now and taken an oath to tell all of you the truth about what happened." [(4)] And you should have an abiding belief that they told you the truth. You should have an abiding belief that he is guilty. And if you do have an abiding belief in the truth of what those girls said, then it is your sworn duty, your sworn obligation, and your sworn responsibility to find him guilty. (5) "[I]f you have an abiding belief that equals a reasonable – beyond a reasonable doubt."

Defense counsel objected only to this last statement. The jury found Sorenson guilty of these crimes against BES, BLS, and AKB, and Sorenson appeals.

Dkt. 34, Exhibit 2, Unpublished Opinion, *State v. Sorenson*, Court of Appeals Cause No. 43199-8-II, at 2-4 (internal citations and footnotes omitted).

## EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 181-82. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. *See Gandarela v. Johnson,* 286 F.3d 1080, 1086–87 (9th Cir. 2001) (holding that, because the affidavits proffered by the petitioner in support of his actual innocence claim "speak for themselves" and petitioner "failed to show what more an evidentiary hearing might reveal of material import on his assertion of actual innocence," the district court had not abused its discretion in finding that an evidentiary hearing was unnecessary), *cert. denied,* 537 U.S. 1117, (2003).

1  The Court finds that it is not necessary to hold an evidentiary hearing in this case because
2  the petition may be resolved on the existing state court record.

3  DISCUSSION

4  **I.  Statute of Limitations**

5  Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which is
6  codified at 28 U.S.C. § 2241 *et seq.*, a one-year statute of limitations applies to federal habeas
7  petitions. Section 2244(d)(1)(A) requires a prisoner to file a habeas petition within one year of
8  "the date on which the [state court] judgment [of conviction] became final by the conclusion of
9  direct review or the expiration of the time for seeking such review." A direct review generally
10 concludes and the judgment becomes final either upon the expiration of the time for filing a
11 petition for writ of certiorari with the United States Supreme Court, or when the Supreme Court
12 rules on a timely filed petition for certiorari. *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir.
13 1999). If during the limitations period a "properly filed application for state post-conviction or
14 other collateral review . . . is pending," the one-year period is tolled. 28 U.S.C. § 2244(d)(2); *see*
15 *Pace v. DiGulielmo*, 544 U.S. 480, 410 (2005).

16 On direct appeal, the Washington Supreme Court denied petitioner's request for review on
17 July 9, 2014. Dkt. 34, Exhibit 7. Petitioner did not file a petition for writ of certiorari in the
18 United States Supreme Court, making his direct appeal final on October 7, 2014, the date the
19 time for filing a petition for certiorari expired. *See* U.S. Sup. Ct. Rule 13 (a writ of certiorari
20 must be filed within 90 days after entry of the judgment); *Bowen,* 188 F.3d at 1158-59.

21 Thus, the AEDPA limitations period began running on October 8, 2014, which was the
22 day after his conviction became final. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002).
23 It expired one year later -- on October 8, 2015. Petitioner filed his PRP on September 15, 2015;
24 however, as the Washington state courts dismissed petitioner's PRP as time-barred, the PRP did

REPORT AND RECOMMENDATION - 6

not toll the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding "section 2244(d) does not permit the re-initiation of the limitations period that has ended before the state petition was filed"); *Brown v. Curry*, 451 Fed. Appx. 693 (9th Cir. 2011) (finding the petitioner's state habeas petitions, which were filed after the expiration of the statute of limitations and denied as untimely, did not toll the statute); *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) and *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (state court addressing merits of claims in the alternative did not undermine its holding that the petition was time barred); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (state supreme court's denial without comment does not undermine the state court of appeals' untimeliness finding).

Petitioner did not file his federal habeas petition until March 24, 2016, which was 168 days after the limitations period expired on October 8, 2015. As petitioner did not timely file his petition and his PRP did not toll the limitations period, his petition is time-barred. *See Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (federal petition is time-barred where state habeas petition is filed after expiration of the statute of limitations).

**II.      Equitable Tolling**

Petitioner argues that his PRP was untimely because his attorney failed to file the PRP on time and that equitable tolling should apply. Dkt. 36 at 2.

The AEDPA statute of limitations is subject to equitable tolling where the petitioner pursued his rights diligently and "some extraordinary circumstance stood in his way." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted). To receive equitable tolling, a petitioner at the very least must show the extraordinary circumstances "were the but-for and proximate cause of his untimeliness." *Ansaldo v. Knowles*, 143 Fed. Appx. 839, 840 (9th Cir. 2005).

In *Lawrence v. Florida*, 549 U.S. 327 (2007), the Supreme Court held that a miscalculation of the statute of limitations does not warrant equitable tolling.

> Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.

*Lawrence*, 549 U.S. at 336-37 (internal citation omitted).

The Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631 (2010) references several lower court cases where an attorney's unprofessional conduct was egregious and constituted extraordinary circumstances that justified equitable tolling. These cases involved a persistent lack of communication, failure to return the client's files, among other serious forms of professional misconduct. *Id.* at 651. By contrast, attorney negligence such as missing a filing deadline does not warrant equitable tolling. *Id.* at 651-52 (citing *Lawrence,* 549 U.S. at 336 (2007); *Irwin v. Dept. of Veteran Affairs,* 498 U.S. 89, 96 (1990)).

The Ninth Circuit has also held that "[t]he miscalculation of the statute of limitations period by counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." *Frye v. Hickman,* 273 F.3d 1144, 1146 (9th Cir. 2001); *see also Miranda v. Castro,* 292 F.3d 1063, 1064 (9th Cir. 2002) (holding that counsel's mistake regarding the deadline for a federal habeas petition did not rise to the level of "extraordinary circumstances" to warrant equitable tolling).

The case at hand involves counsel's investigation about the unsettled nature of Washington law regarding the finality of a judgment and a decision from the Washington Court of Appeals that petitioner's PRP was untimely. This is not such egregious attorney misconduct as to constitute extraordinary circumstances that warrant equitable tolling. *See Lawrence*, 549 U.S.

at 336-37; *Holland*, 560 U.S. at 651-52; *Frye,* 273 F.3d at 1146; *Miranda,* 292 F.3d at 1064. Here, the PRP was filed on September 15, 2015, within one year of the corrected judgment and sentence, based on counsel's interpretation of Washington law at the time and the date that petitioner's judgment was corrected. *See* Dkt. 34, Exhibit 8 at 7; Exhibit 11 at 1-5; Exhibit 13 at 7-12; Exhibit 15 at 1-4. *See also*, Dkt. 36 (emails between petitioner and counsel), ("I [counsel] talked this over long ago with Lisa Tabbut [appellate attorney] who informed me the deadline was not the date of the mandate, but rather the date of the order amending the J&S."); ("Apparently no one's found a case with the same facts as yours [counsel describing the oral argument to petitioner]"); ("[A] corrected judgment is the new final judgment and the judges asked the State why that wasn't the rule."). During the PRP proceedings, counsel reasonably argued that petitioner's judgment and sentence was not final until the superior court issued an order correcting the judgment. Dkt. 34, Exhibit 8, 11, 13, 15. Counsel argued that the order correcting the judgment changed the dates of the offenses, and thus, the changes were substantive and not clerical errors. Dkt. 34, Exhibit 11. As cited by counsel, there were multiple Washington cases which could have been reasonably interpreted to establish that the direct appeal was final on the date that petitioner's judgment and sentence was corrected, not on the date that the mandate was issued. *See* Dkt. 34, Exhibits 11, 13, 15. In the petition for review before the Washington Supreme Court, counsel argued that this was a matter of first impression in Washington state court. Dkt. 34, Exhibit 13 at 8-12. Simply because the Washington Court of Appeals decided against petitioner does not demonstrate that counsel's actions were egregious or that petitioner is entitled to equitable tolling.

Thus, the fact that counsel investigated the timeliness of petitioner's PRP and pursued a theory based on Washington law at the time does not constitute egregious conduct and is not grounds to equitably toll the federal statute of limitations. In view of the foregoing Supreme

1 | Court and Ninth Circuit case law, counsel's actions and filing of the PRP do not rise to the level
2 | of an "extraordinary circumstance" thereby warranting equitable tolling. For example, counsel
3 | did not abandon petitioner, fail to communicate with him, or prevent him from filing his PRP or
4 | federal habeas petition. *See Holland*, 560 U.S. at 651-52;

5 | And while the Court acknowledges that petitioner was concerned about missing the
6 | deadline to file his PRP, *see* Dkt. 36 at 11, 12, 16, 17, such diligence does not warrant equitable
7 | tolling. Rather, the diligence requirement is concerned with whether the petitioner was "diligent
8 | in his efforts to pursue his appeal at the time his efforts were being thwarted." *Grant v.
9 | Swarthout*, 862 F.3d 914, 923 (9th Cir. 2017) (internal quotations and citations omitted).
10 | Essentially, the court expects the petitioner to attempt to resolve any impediment *during* the time
11 | which an extraordinary circumstance exists. *See id.* Here, petitioner has not shown that he
12 | experienced any extraordinary circumstance sufficient to justify equitable tolling. Therefore, the
13 | fact that petitioner expressed concerns about the timeliness of his PRP is of little relevance.

### III.     Actual Innocence

In his traverse, petitioner argues that actual innocence should excuse him from his untimely petition. Dkt. 36 at 1. Petitioner argues that he recently found evidence of the purchase date of the house where counts one to four were alleged. Dkt. 36 at 2. Petitioner argues that this evidence will show that one of the victims, BES, was 14 and a half years old at the time of the sexual contact, rather than 11 or 12 years old. Dkt. 36 at 2, 32. It appears that the gravamen of petitioner's claim is that he should not have been convicted of first or second degree molestation, which under Washington law, is defined as sexual contact with individual who is less than 14 years old. *See* RCW 9A.44.083 (child molestation in the first degree is defined as sexual contact with another who less than 12 years old) and RCW 9A.44.086 (child molestation in the second degree is defined as sexual contact with another who is at least 12 years old but less than 14

1  years old). In the second supplemental response, respondent argues that the evidence is not new,
2  it falls short of the evidence required to allow petitioner to pass through the actual innocence
3  gateway, and the evidence is irrelevant. Dkt. 47.
4       As an initial matter, the Court notes that in the second supplemental response, petitioner
5  raises new arguments, contending that new evidence also impeaches the testimony of the other
6  two victim, BLS and AKB. Dkt. 51. However, petitioner did not raise these claims in his petition
7  (Dkt. 4) or traverse (Dkt. 36). Parties "cannot raise a new issue for the first time in their reply
8  briefs." *State of Nev. v. Watkins,* 914 F.2d 1545, 1560 (9th Cir. 1990); *see also Cedano—Viera*
9  *v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) ("[W]e decline to consider new issues
10 raised for the first time in a reply brief.") (citing *Thompson v. Commissioner,* 631 F.2d 642, 649
11 (9th Cir. 1980). Thus, the Court declines to consider the arguments presented in the second
12 supplemental response at this time.
13      "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass
14 whether the impediment is a procedural bar ... [or] expiration of the statute of limitations."
15 *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see also Lee v. Lampert,* 653 F.3d 929, 934–37
16 (9th Cir. 2011) (en banc). The Court must apply the standards for gateway actual innocence
17 claims set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *See McQuiggin*, 569 U.S. at 386. "[A]
18 petitioner does not meet the threshold requirement unless he persuades the district court that, in
19 light of the new evidence, no juror [or other trier of fact], acting reasonably, would have voted to
20 find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup,* 513 U.S. at 329).
21      "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v.*
22 *United States*, 523 U.S. 614, 623 (1998); *Calderon v. Thompson,* 523 U.S. 538, 559 (1998);
23 *Muth v. Fondren,* 676 F.3d 815, 819, 822 (9th Cir.), *cert. denied,* 133 S.Ct. 292 (2012). In order
24

to make a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000) (citing *Calderon v. Thomas*, 523 U.S. 538, 559 (1998)).

The Court concludes that petitioner has not met his burden under *Schlup. See Schlup*, 513 U.S. at 324. First, rather than maintaining that he is actually innocent, petitioner disputes the *sufficiency* of the evidence against him for his convictions of first and second degree molestation and the legality of his sentence. In his petition, petitioner cites to the prosecution's lack of direct evidence linking him with the crimes charged. *See* Dkt. 4 at 8 (In ground three of his petition, petitioner contends there was insufficient evidence to prove every element of the crimes charged beyond a reasonable doubt, the state failed to provide any evidence that "sexual contact" existed between petitioner and the victims, and the acts did not meet the statutory language provided by the statute.). However, a claim of legal insufficiency is not proof of "actual innocence." *See Bousley*, 523 U.S. at 623. Petitioner has not shown that he did not have sexual contact with BES but argues that the actions occurred when BES was over 14 years old, which is insufficient to demonstrate a claim of actual innocence. *See Terranova v. Ryan,* 2015 WL 3953888, at *1 (D. Ariz. June 29, 2015) (finding no claim of actual innocence when the petitioner did not deny shooting the victim but appeared to argue that the shooting was justified); *See Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013) ("[W]e have denied access to the *Schlup* gateway where a petitioner's evidence of innocence was merely cumulative or speculative or was insufficient to

1 overcome otherwise convincing proof of guilt."). In order to pass through the *Schlup* gateway,

2 petitioner must show that he did not commit the crime. Petitioner's argument is not sufficient.

3       To the extent that petitioner argues that the new evidence impeaches BES' testimony,

4 impeachment evidence can demonstrate actual innocence, where it gives rise to "sufficient doubt

5 about the validity of [the] conviction." *Carriger v. Steward,* 132 F.3d 463, 478 (9th Cir. 1997);

6 *see also Schlup,* 513 U.S. at 330 ("[U]nder the gateway standard ..., the newly presented

7 evidence may indeed call into question the credibility of the witnesses presented at trial."). In

8 *Carriger,* the Ninth Circuit found that the petitioner had met the *Schlup* standard where the

9 petitioner had presented a sworn statement from a third party confessing to the crime for which

10 the petitioner was convicted. *Carriger,* 132 F.3d at 478. There was also evidence demonstrating

11 that the third party had bragged about committing the crime; described how he disposed of the

12 evidence and maintained the lie that the petitioner had committed the crime; described the nature

13 of the crime; and had a history of violence and deceit. *Id.* at 478-79.

14       This case, however, is distinguishable. Petitioner contends that he has met the actual

15 innocence standard by offering new evidence of the date that he purchased his family home,

16 which he alleges contradicts BES' testimony regarding her age at the time of the sexual contact.

17 Dkts. 36, 51.  However, such evidence is not nearly as compelling as a third-party confession

18 that undermined the validity of the prosecution's entire case. As discussed above, the evidence

19 presented by petitioner does not demonstrate that he is actually innocent and did not molest BES.

20 Petitioner has not shown how such evidence would have necessarily undercut the reliability of

21 BES' testimony that sexual conduct had actually occurred.

22       And in fact, BES testified that she did not remember in which house each of the

23 molestations occurred and that the family moved around a lot. Dkt. 48, Exhibit 20 at 234-36,

24

REPORT AND RECOMMENDATION - 13

1  237, 238, 256. BES testified that the molestation started when she was eleven and stopped when

2  she was fourteen. Dkt. 48, Exhibit 20 at 238, 245-46. BES testified that between this time,

3  petitioner molested her at least once a month. Dkt. 28, Exhibit 20 at 246. Thus, even if

4  petitioner's evidence provided some basis for impeachment of BES' testimony, it does not,

5  fundamentally call into question the reliability of his conviction. If the jury had been presented

6  with the home purchase documents and information, it would still have been likely to convict,

7  given that BES testified in open court that petitioner had molested her once a month between the

8  ages of eleven and fourteen. Even if it had affected the victim's credibility, the Court is not

9  convinced that in light of BES' testimony that it is more likely than not that no reasonable juror

10 would have convicted him. *See Sistrunk v. Armenakis,* 292 F.3d 669, 677 (9th Cir. 2002) (en

11 banc) (affirming District Court's conclusion that the petitioner's *Schlup* claim relied on an

12 attempt to discredit prosecution witnesses rather than affirmatively presented new exculpatory

13 evidence that the petitioner had not committed the crime), *cert. denied,* 537 U.S. 1115 (2003).

14      In sum, petitioner's conclusory allegations of alleged actual innocence and arguments of

15 legal insufficiency are insufficient to establish even a prima facie gateway actual innocence

16 claim under the exacting standard established by *Schlup*. *See Schlup,* 513 U.S. at 316; *Shumway,*

17 223 F.3d at 990. Accordingly, petitioner has failed to carry his burden of demonstrating that he is

18 entitled to equitable tolling based on actual innocence. The Court therefore recommends

19 dismissing the petition with prejudice as time-barred.

20                         CERTIFICATE OF APPEALABILITY

21      Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

22 court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

23 (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner

24

1  has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. §

2  2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could

3  disagree with the district court's resolution of his constitutional claims or that jurists could

4  conclude the issues presented are adequate to deserve encouragement to proceed further."

5  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (*citing Slack v. McDaniel*, 529 U.S. 473, 484

6  (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a

7  certificate of appealability with respect to this petition.

|  |  |
|---|---|
| 1 | CONCLUSION |
| 2 | The Court recommends dismissing the petition with prejudice as time-barred. The Court |
| 3 | finds that it is not necessary to hold an evidentiary hearing and petitioner is not entitled to a |
| 4 | certificate of appealability. |
| 5 | Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have |
| 6 | fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. |
| 7 | 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* |
| 8 | review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver |
| 9 | of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.* |
| 10 | *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit |
| 11 | imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on |
| 12 | August 2, 2019 as noted in the caption. |
| 13 | Dated this 11th day of July, 2019. |

J. Richard Creatura
United States Magistrate Judge